UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DIMAS GARZA #270734,

        Plaintiff,        Case No. 2:17-cv-104

v.        HON. GORDON J. QUIST

ROBERT NAPLES, et al.,

        Defendants.
_____/

**REPORT AND RECOMMENDATION**

This is a civil rights action brought by state prisoner Dimas Garza pursuant to 42 U.S.C. § 1983. Plaintiff alleges that Defendants Warden Robert Naples, Assistant Deputy Warden James Alexander, Assistant Deputy Warden Sarah Schroeder, Inspector Niemisto, Inspector Tasson, Resident Unit Manager Darren Viitilia, Resident Unit Supervisor Ms. Cesarek, and Security Threat Group Sergeant Mr. Lee failed to protect him from inmate assaults after he warned them of the threats. Plaintiff alleges violations under the First, Fourth, Fifth, Eighth, Ninth, and Fourteenth Amendments, ethnic intimidation, assault, abuse of process, and libel and slander. Defendants filed a motion for partial summary judgment (ECF No. 34) on the ground that Plaintiff failed to exhaust his available administrative remedies. Plaintiff filed a response. (ECF No. 36).

Plaintiff alleges that he arrived at the Marquette Branch Prison (MBP) in April of 2016, and was confined in G-block, because he had enemies in B-block. During August of 2016, Plaintiff moved into segregation after a smuggling attempt. He learned that the son of the victim his co-defendant had murdered resided at MBP and wanted to kill him to get revenge for his father.

On August 28, 2016, Plaintiff kited Defendant Warden Napel requesting protection. Defendants Viitalia and Sergeant Lee stopped at Plaintiff's cell on or about September 1, 2016, to discuss the kite. When Plaintiff told him about the threat, Defendant Viitalia stated "Ain't no one going to do nothing to "Big D", you run the operation." Plaintiff states that he is known as "Big D" among prisoners. Defendant Viitalia stated that he would investigate. Defendant Lee stated to Plaintiff that he did not believe him. On another occasion, Defendant Niemisto told Plaintiff that he would investigate. Defendants Alexander and Schroeder told Plaintiff that they would send the Inspector and STG sergeant to speak with Plaintiff and to investigate his concern.

Plaintiff asked each Defendant for protection and for a transfer. Plaintiff had his family speak with Defendants to address his concerns for protection. Plaintiff informed Defendants that the victim's son was in B-block with Plaintiff, but Plaintiff did not know what he looked like. Defendants told Plaintiff that nothing would happen and that he should stop writing and requesting protection. Defendants told Plaintiff that there was no room in segregation and that a transfer was possible, but that he needed to stop making requests because it would only get worse for him. This conversation caused other prisoners to believe that Plaintiff was a "rat-informant." Defendants refused to place Plaintiff in protective custody, and placed his life in danger by calling him a snitch.

On October 6, 2016, Plaintiff visited the Security Threat Group yard with all the violent and dangerous gang-members. Plaintiff went into the unsupervised kiosk room. Ninety-five percent of all inmate assaults occur in the kiosk room. Plaintiff was assaulted and stabbed nine times by the victim's son. Plaintiff asserts that the officers watched the assault take place and did nothing to intervene until the victim's son left the kiosk room. Plaintiff was rushed to the

hospital where he almost died from his injuries. Plaintiff received multiple stab wounds and a punctured lung. Plaintiff had life-saving emergency surgery.

Plaintiff returned to MBP on October 11, 2016, where he was initially placed in quarantine until he was released into the general population on October 27, 2016. Plaintiff was housed in the same unit with a prisoner whose mother was arrested for her involvement with Plaintiff in the attempted smuggling scheme. Plaintiff visited the Security Threat Group yard on October 28, 2016. Within five minutes of being in the yard, Plaintiff was assaulted. Defendant Lee visited Plaintiff in quarantine after the second assault to inform Plaintiff that they had arrested the son of the mother involved in the smuggling scheme for the assault.

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-216 (2007). A moving party without the burden of proof need show only that the opponent cannot sustain his burden at trial. *See Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 787 (6th Cir. 2000); *see also Minadeo v. ICI Paints*, 398 F.3d 751, 761 (6th Cir. 2005). A moving party with the burden of proof faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002); *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). "Where the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986) (quoting W. SCHWARZER, *Summary Judgment Under the Federal Rules: Defining Genuine Issues of Material Fact*, 99 F.R.D. 465, 487-88 (1984)). The United States Court of Appeals for the Sixth Circuit repeatedly has emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561 (quoting 11 JAMES WILLIAM MOORE, ET AL., MOORE'S FEDERAL PRACTICE § 56.13[1], at 56-138 (3d ed. 2000); *Cockrel*, 270 F.2d at 1056 (same). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *See Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available

4

administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *See Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 136 S.Ct. 1850, 1859-1860 (2016).

MDOC Policy Directive 03.02.130 (effective July 9, 2007), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the <u>facts</u> involving the issue being grieved (i.e., who, what, when,

5

where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original). "But when prison officials decline to enforce their own procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules does not create a procedural bar to that prisoner's subsequent federal lawsuit." *Hardy v. Agee*, No. 16-2005, at 3 (6th Cir. Mar. 5, 2018) (unpublished) citing *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id*. at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id*. at 324.

*Mattox v. Edelman*, 2017 WL 992510, slip op. at 8-9 (6th Cir. 2017).[1]

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the

---

[1] In *Holloway v. Mclaren*, No. 15-2184 (6th Cir., April 7, 2016) (unpublished), the Sixth Circuit concluded that where a plaintiff fails to name each defendant in his grievance, the un-named defendants may not be dismissed for failure to exhaust grievance remedies if the MDOC did not reject the grievance under the policy requiring a grievant to name each individual involved. The Sixth Circuit stated: "Because MDOC officials addressed the merits of Holloway's grievance at each step and did not enforce any procedural requirements, Holloway's failure to identify the defendants named in this lawsuit and to specify any wrongdoing by them in his grievances cannot provide the basis for dismissal of his complaint for lack of exhaustion." *Id*. at 3. In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." slip op. at 16. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD. If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG. "The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved . . . ." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to PD 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ V of PD 03.02.130. *Id.* at ¶Q. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with PD 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Defendants argue that Plaintiff only exhausted his grievance remedies against Defendants Naples, Niemisto, Tasson, and Lee for failing to protect him from assault in violation of the Eighth Amendment. Defendants Viitalia, Alexander, Schroeder, and Cesarek argue that

7

they are entitled to dismissal because Plaintiff never named them in his exhausted grievance and that all claims, other than his Eighth Amendment failure to protect claim, should be dismissed.

Plaintiff filed a Step I grievance, MBP 16-1002-03- 003B, on October 14, 2016, naming "Director Daniel Heyens, Warden Napel, Transfer Coordinator, and Inspector for 'Failure to Protect.'" Plaintiff asserted that these individuals failed to take precautionary steps to assure his safety by not housing him with his victim's family member, failed to place a SPON in his file, and take steps to prevent the attack on his life. (ECF No. 35-2, PageID.353). Defendant Schroeder reviewed the grievance with Plaintiff. The grievance was denied at Step I. (PageID.354). The response stated: "information obtained after the assault indicated that the assailant and assailant's father were shot by a co-defendant of prisoner Garza when the assailant was 10 months old. This crime occurred approximately twenty years earlier. No SPON's existed separating prisoner Garza and the assailant or prisoner Garza's co-defendant." *Id*. Plaintiff's Step II and Step III appeals were denied. (PageID.351-352).

Plaintiff filed a second Step I grievance, MBP 16-11021-87-28A, on October 31, 2016, naming "MDOC Director Danial Heyens, Warden Napel, Inspector <u>unknown</u>, Sgt. Lee, other unknown officials." For 'failure to protect' . . . the 2nd time within the month." (PageID.349). Although, this grievance included his second assault, which had not occurred at the time he filed MBP 16-1002-03-0003B, the grievance was rejected as duplicative at each Step. (PageID.347-349).

Defendants argue that Plaintiff failed to allege First, Fourth, Fifth, Ninth, and Fourteenth Amendment claims in his grievances. Defendants also argue that Plaintiff failed to allege Michigan Ethnic Intimidation Statute violations, Eighth Amendment claims other than a failure to protect claim, assault, abuse of process, and declaratory judgment claims. In addition,

8

Defendants assert that the unnamed Defendants are entitled to dismissal for failure to name them in a grievance as required by MDOC policy. The MDOC did not reject Plaintiff's grievances for failing to name parties or for failing to set forth specific claims. The Court should not enforce MDOC procedural rules that the MDOC chose not to enforce. *Reed-Bey v. Pramstaller*, 603 F.3d at 325. Plaintiff alleges that he was told by Defendants to stop complaining and to stop filing grievances, because his actions were making things worse for him. In fact, Plaintiff alleges that when he attempted to file grievances to exhaust each Defendant and each claim, the grievance coordinator refused to process the grievances. Defendants have not addressed Plaintiff's argument that the grievance process was unavailable when the grievance coordinator refused to process his grievances, or when Defendants threatened and intimidated him in order to stop him from filing grievances.

For the foregoing reasons, I recommend that Defendants' motion for summary judgment (ECF No. 34) be denied.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   June 12, 2018

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).